UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

M. HOLLOWAY BURGESS,

                    Plaintiff,            23-cv-4944 (JGK)

      - against -              <u>MEMORANDUM OPINION AND</u>
                                        <u>ORDER</u>

THE NEW SCHOOL UNIVERSITY, ET AL.,

                    Defendants.

---

JOHN G. KOELTL, District Judge:

    The <u>pro se</u> plaintiff, m. Holloway Burgess ("Burgess"), brings this action against The New School University ("TNS") and individual defendants, Katherine Wolkoff ("Wolkoff"), Rachel Schreiber ("Schreiber"), Rhonnie Jaus ("Jaus"), Arlene De La Rosa ("De La Rosa"), Jennifer Penley ("Penley"), Dwight A. Mcbride ("Mcbride"), Renee T. White ("White), Sonya Williams ("Williams"), Sarah Bogucki ("Bogucki"), Shana Agid ("Agid"), Kate Evanishyn ("Evanishyn") and Yasmin Ghanbari ("Ghanbari"). <u>See</u> Second Am. Compl. ("SAC") ¶ 1, ECF No. 37.

    The plaintiff alleges violations of the Americans with Disabilities Act, 42 U.S.C. §§ 1201, <u>et seq.</u> ("ADA"), the Rehabilitation Act, 29 U.S.C. §§ 791, <u>et seq.</u>, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), Title IX of the Education Amendments of 1964, 20 U.S.C. § 1681 ("Title IX"), <u>et seq.</u>, and related state law claims. <u>Id.</u> ¶ 4.

The defendants have moved to dismiss the plaintiff's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). See Defs.' Mot. to Dismiss, ECF No. 42.

## I.

Unless otherwise noted, the following facts are taken from the Second Amended Complaint ("SAC"), ECF No. 37, and are accepted as true for purposes of the motion to dismiss.[1]

## A.

TNS hired Burgess as a part-time professor in 1996. See SAC ¶ 15. Burgess self-identifies as a gender-queer, trans-identified individual, and the plaintiff's preferred gender pronouns are "they/them." See id. ¶¶ 1-2. From 1996 until Burgess's termination on April 17, 2023, Burgess taught photography classes to both undergraduate and graduate students. See id. ¶¶ 15, 19, 91. Burgess taught approximately four classes per year. See id. ¶ 17.

In November 2015, Burgess received an evaluative report (the "First Report") after a TNS administrator visited one of Burgess's courses. The First Report stated that Burgess had failed to comply with certain procedures and that Burgess had failed to teach specific software to students. See id. ¶ 29. In

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

2

spring 2016, Burgess took a sabbatical and paid leave "in hopes that a semester's distance would clear signs of animosity within [Burgess's] Program." Id. When Burgess returned in fall 2016, Burgess engaged in conversations with students in Burgess's class about gun violence and mass shootings. Id. The TNS administration warned Burgess not to engage in future conversations about these incidents, particularly in response to a student's concern. Id.

In fall 2017, Burgess received another warning from TNS administrators when Burgess discussed sensitive topics with Burgess's students, including alleged racism and bigotry in Walt Disney's work. Id.

Burgess alleges that in September 2016, Burgess was assigned a "small, cramped room without windows," for one of Burgess's classes. Id. ¶ 31. Burgess requested that TNS provide an accommodation, and that request was denied. Id. ¶¶ 31–32. Burgess alleges that in fall 2017, Burgess was assigned to teach a new course, for which Burgess was not prepared, id. ¶ 33, and in spring 2018, Burgess was again assigned to teach in a small room without windows, id.

In 2018, Burgess received a diagnosis of claustrophobia anxiety disorder. Id. ¶ 31. On February 2, 2018, Burgess's doctor completed an ADA request for a claustrophobia

accommodation on Burgess's behalf and on February 9, 2018, TNS "purported to approve" Burgess's request. Id. ¶ 35. Burgess alleges that despite the ADA request, TNS assigned Burgess a "series of inappropriate spaces" as classrooms. See id. ¶¶ 36–37.

Burgess alleges that Burgess met one of the individual defendants, Photography Program Chair Katherine Wolkoff, in the spring of 2019, and that Burgess told Wolkoff that Burgess's preferred gender pronouns were "they/them." See id. ¶ 38. Thereafter, in January 2020, Wolkoff released an evaluative report (the "Second Report"). Id. ¶ 39. Burgess alleges that in the Second Report, Wolkoff "repeatedly misgendered" Burgess and inaccurately alleged that Wolkoff had witnessed Burgess "microaggressing a student" in one of Burgess's classes, and inflated student complaints. Id. Burgess complains that before Burgess had an opportunity to respond to the Second Report, Burgess was denied a multi-year assignment and denied a sabbatical. Id.

Burgess alleges that Burgess experienced distress after receiving the Second Report. Id. ¶ 40. Burgess appealed the Second Report, but that appeal was rejected by Executive Dean Schreiber. Id. Burgess then presented a second appeal, but in fall 2020, individual defendant Kate Evanishyn—the Assistant

4

Provost of Part-Time Faculty Affairs—declined to consider the appeal because the Second Report had no direct disciplinary consequences. Id.

On February 25, 2021, Burgess was asked by individual defendant Yasmin Ghanbari—Dean of Part-Time Faculty Affairs—to attend a meeting with Wolkoff, Ghanbari, and individual defendant Shana Agid, another TNS Dean. Id. ¶ 41. Burgess alleges that this meeting was characterized as a "Discovery" meeting. Id. Burgess asserts that in the meeting Wolkoff, Ghanbari, and Agid discussed student complaints about Burgess's "racial microaggressions," but Burgess believes that the individual defendants "appeared to exaggerate the number of students who had reported concerns[.]" Id.

Thereafter, on April 2, 2021, Ghanbari assigned Burgess to attend workshops focused on "improvement measures." Id. ¶ 42. On April 5, 2021, Burgess notified Ghanbari in writing of the inaccuracies Burgess alleged were discussed in the February 25 meeting, and complained that Burgess was not provided an opportunity to respond to the questions the administration had raised. Id.

Burgess alleges that on April 8, 2021, Burgess received a "demotion" from Wolkoff. Id. ¶ 43. Burgess states that Wolkoff assigned Burgess two freshman-level technical courses, rather

than the studio course Burgess had previously taught. Id.
Burgess alleges that Burgess experienced "severe physical
reactions in response to the hostilities and the implications of
a demotion," including "pressure in the chest, prolonged
pounding heartbeat, shortness of breath, trembling, sweating,
nausea[,] and an inability to sleep." Id. ¶ 44.

On April 12, 2021, Burgess's doctor – Dr. Gabriela
Rodriguez – diagnosed Burgess with anxiety disorder and
recommended that Burgess not be assigned new courses and that
Burgess be permitted to teach in a "large room with windows."
Id. ¶ 45. Burgess submitted an ADA request signed by Dr.
Rodriguez. Id. Burgess then took sick days on April 14 and 15,
2021 because Burgess alleges that work-related-events had caused
Burgess anxiety. Id. ¶ 46.

On April 27, 2021, Ghanbari, Wolkoff, and Agid asked
Burgess to attend a "disciplinary meeting," and presented
Burgess with a "Performance Improvement Plan" (the "PIP"). Id. ¶
47.

On May 6, 2021, Dr. Rodriguez submitted an ADA request form
and requested that Burgess teach "no new courses" and that
Burgess be provided with a "big room, windows, [and] ventilation
[and] stable curriculum." Id. ¶ 49. Burgess alleges that on May
19, 2021, individual defendant Arlene De La Rosa—Associate

Director of Benefits—asked Dr. Rodriguez whether advance notice of course changes would minimize Burgess's anxiety. Id. ¶ 52. Burgess claims that Dr. Rodriguez responded that Burgess "should not have new courses assigned to them, regardless of advanced notice." Id.

Burgess alleges that on July 23, 2021 TNS denied Burgess's request for accommodation, because "[p]art of the essential functions of [Plaintiff's] position is to keep up with the needs of the University such as curriculum requirements." Id. ¶ 56. TNS determined that the institution would provide Burgess with advance notice of course changes and departmental assistance with those changes. Id. On July 27, 2021, Burgess requested reconsideration of Burgess's application for reasonable accommodation under the ADA and included in that request a letter from Burgess's psychologist—Dr. Veronica King—that indicated that teaching new courses would "severely trigger the negative impacts" of Burgess's Anxiety Disorder. Id. ¶ 57.

Burgess alleges that on August 13, 2021, TNS denied Burgess's request for reconsideration of the denial of Burgess's request for an accommodation. Id. ¶ 58. TNS then assigned Burgess new courses. Id. ¶ 59.

On September 8, 2021, Burgess wrote to the Title IX coordinator—individual defendant Rhonnie Jaus—to complain of

"willful acts of discrimination by Katherine Wolkoff and negligence by the Administration." Id. ¶ 62. On September 9, 2021 and October 12, 2021, Jaus and the Associate Director for Title IX, Gene Puno-Deleon interviewed Burgess by Zoom about Burgess's complaint. Id. ¶ 63. Burgess then shared additional concerns by email. Id.

Burgess alleges that throughout the fall 2021 semester, Burgess's disability worsened and "was exacerbated by TNS's lack of support for [Burgess]." Id. ¶ 65. On November 10, 2021, Burgess sent a letter to the President of TNS, individual defendant Dwight A. McBride, asking TNS to withdraw the PIP. Id. ¶ 66. Burgess alleges that President McBride declined to answer any letters. Id. ¶ 67. On November 12, 2021, the plaintiff sent a letter of resignation to President McBride. Id. ¶ 68. Burgess alleges that TNS asked Burgess to continue teaching through the end of the semester. Id.

On December 1, 2021, TNS suspended Burgess from teaching for the spring 2022 semester onwards, for failing to complete the PIP. Id. ¶ 72. On December 20, 2021, TNS held a "Step 2 Grievance" meeting with Burgess. Id. ¶ 73. On December 29, 2021, Burgess sent Jaus additional information Burgess deemed relevant to Burgess's Title IX claim against Wolkoff for sex discrimination, which included a Title IX claim against Ghanbari

for "contributing and supporting biased, discriminatory actions of Katherine Wolkoff[.]" Id. ¶ 74. On January 13, 2022, Burgess requested a response from Jaus to the Title IX complaint. Id. ¶ 75.

On February 11, 2022, a "grievance meeting" was held with Burgess. Id. ¶ 78. Two of the individual defendants—Sonya Williams and Kate Evanishyn—participated in the meeting. Id. On April 29, 2022, Jaus sent Burgess a letter regarding the outcome of Burgess's Title IX complaint, which the defendants contend "closed the matter as TNS found no instances of discrimination." ECF No. 42 at 17; SAC ¶ 80. Between April 29, 2022 and June 22, 2022, Burgess alleges that Jaus and Burgess exchanged several emails regarding Burgess's disagreements with the Title IX process. Id. ¶¶ 80–81. On May 31, 2022, Burgess wrote to Provost White and asked the Provost to intervene in the Title IX complaint. Id. ¶ 81. On September 23, 2022, Burgess alleges that a Title IX committee led by Jennifer Penley met with Burgess and that Penley eventually ruled against Burgess's grievance. Id.

On August 15, 2022, Burgess filed a complaint with the Office of Civil Rights for the U.S. Department of Education, alleging that Jaus had failed to provide an accurate investigation into Burgess's Title IX complaint and that Jaus had provided a "biased, inaccurate summary report." Id. ¶ 82. On

February 10, 2023, the Office of Civil Rights deferred the decision on Burgess's complaint to the EEOC. Id. Burgess remained suspended for the fall 2022 semester. Id.

In October 2022, Burgess alleges that Sarah Bogucki replaced Ghanbari as the TNS representative to communicate with Burgess regarding the PIP. Id. ¶ 84. Bogucki sent Burgess a "final" reissuance of the PIP, notifying Burgess that failure to engage would result in Burgess's termination. Id. Burgess declined. Id.

On January 1, 2023, Burgess's psychologist—Dr. Stephen A. Zurrow—confirmed Burgess's diagnoses of Generalized Anxiety Disorder and claustrophobia, and added panic disorder and PTSD to Burgess's diagnoses. Id. ¶ 85. Dr. Zurrow confirmed that the "accommodation of no new courses would have allowed [Burgess] to continue teaching." Id. Burgess alleges that Dr. Zurrow concluded that Burgess was "being denied the small, reasonable accommodation (the kind ADA mandates) that would have allowed [Burgess] to continue to offer the students of The New School the quality educational experience they deserve[.]" Id.

Burgess alleges that on January 17, 2023, Bogucki again demanded that Burgess comply with the PIP or face termination. Id. ¶ 86. Burgess responded that compliance with the PIP would have a negative impact on Burgess's disability. Id. ¶ 87.

Burgess alleges that Bogucki responded to Burgess's email and requested that Burgess provide information to Human Resources by February 28, 2023 "identifying what, if any, accommodations could be provided so that you can perform the required functions related to the PIP. TNS cannot delay your return to work any further." Id. ¶ 88. Burgess alleges that Bogucki sent Burgess a letter on March 22, 2023, and attempted to set up a meeting with Burgess on March 28, 2023. Id. Burgess alleges that the letter made clear that Burgess's failure to appear at the March 28, 2023 meeting would result in TNS's "proceeding to render a final action on the meeting." Id. ¶ 90. On April 17, 2023, TNS terminated Burgess's employment. Id. ¶ 91.

**B.**

Burgess alleges violations of Title VII, Title IX, the Rehabilitation Act, the ADA, and state law claims. Specifically, the plaintiff alleges that the defendants failed to provide reasonable accommodations to Burgess, subjected Burgess to discrimination and a hostile work environment due to Burgess's protected status, and retaliated against Burgess for engaging in protected activity. See SAC ¶ 4. Burgess claims that Burgess was discriminated against based on Burgess's gender and disability, see ECF No. 37-1 at 3-4, and that TNS did not make a reasonable accommodation for the plaintiff, see id. at 5.

11

On June 9, 2022, the plaintiff filed a charge before the Equal Employment Opportunity Commission ("EEOC"), alleging sex discrimination, disability discrimination, and retaliation pursuant to Title VII, the ADA, and the Age Discrimination in Employment Act of 1967 ("ADEA"). SAC ¶ 8; see ECF No. 42-4 at 2–3.[2] On March 13, 2023, the plaintiff received a Notice of Right to Sue ("NRTS") from the EEOC. SAC ¶ 9. On Monday, June 12, 2023, the plaintiff filed the plaintiff's original complaint by email, but that complaint was not reflected on the Electronic Case Filing ("ECF") system until June 13, 2023. See id. ¶¶ 10–11. The plaintiff claims that the plaintiff emailed this Court's Pro Se office at 8:34 p.m. on June 12, 2023, attempting to file the complaint within ninety days after receiving the NRTS. See id. ¶¶ 9–10. The plaintiff filed an Amended Complaint on July 13, 2023. ECF No. 5.

Thereafter, on October 12, 2023, the plaintiff filed a second EEOC charge, alleging hostile work environment under Title VII, and discrimination claims under the ADA and Title IX. Id. ¶ 93; ECF No. 42 at 26; ECF No. 61. The plaintiff then received a subsequent NRTS on October 16, 2023. SAC ¶ 97.

---

[2] Although the plaintiff complained about age discrimination before the EEOC, the plaintiff did not pursue that claim in the SAC and has therefore abandoned it.

12

On September 12, 2023, this Court held a telephone conference with the parties, and following that conference, permitted Burgess to file a Second Amended Complaint. See ECF No. 13. Burgess filed a Second Amended Complaint ("SAC") on November 27, 2023. See ECF No. 37.[3]

On December 27, 2023, the defendants filed a motion to dismiss the plaintiff's Second Amended Complaint. See ECF No. 42. The defendants contend that dismissal is warranted because the plaintiff failed to adhere to the 90-day requirement after receiving a NRTS, because the plaintiff's allegations are time barred, and because the plaintiff has failed to state a claim upon which relief can be granted.

**II.**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d

---

[3] Burgess alleges that Burgess is a "genderqueer, trans-identified artist," SAC ¶ 2, and Burgess alleges a "protected status on the basis of gender identity and sexual orientation." Id. The Supreme Court has held that Title VII prohibits discrimination against an individual for being transgender, see Bostock v. Clayton County, Georgia, 590 U.S. 644, 650 (2020), but the Supreme Court has not decided whether Title IX applies to transgender individuals. Neither party addresses this issue. For the purposes of the motion to dismiss, we assume without deciding that Title IX applies to Burgess's claim of gender discrimination. Both the NYSHRL and the NYCHRL prohibit discrimination based on gender identity. See N.Y. Exec. Law § 296(a)(NYSHRL); N.Y.C. Admin. Code § 8-102(23)(NYCHRL).

184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

A complaint should not be dismissed if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While factual allegations should be construed in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, although the Court is "obligated to draw the

14

most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.; see also Villar v. Ramos, No. 13 Cv. 8422, 2015 WL 3473413, at *1 (S.D.N.Y. June 2, 2015).

## III.

The defendants first claim that Burgess's claims alleged in the first EEOC charge must be dismissed because Burgess failed to comply with the 90-day requirement after receiving a NRTS. See Defs.' Mot. to Dismiss, ECF No. 42 at 14-16. To maintain a civil action under either Title VII or the ADA, a plaintiff must commence suit within ninety days of receiving a NRTS from the EEOC. See 42 U.S.C. § 2000e-5(f)(1); Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 525-26 (2d Cir. 1996). "The 90-day limit . . . is not merely a suggestion; it is a statutorily imposed requirement necessitating strict adherence, subject only to very narrow exceptions." Celestine v. Cold Crest Care Ctr., 495 F. Supp. 2d 428, 432 (S.D.N.Y. 2007).

"[W]hile the 90-day rule is not a jurisdictional predicate, in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 146 (2d Cir. 1984). "When determining whether equitable tolling is applicable, a district court must consider whether the person

seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period [that person] seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003). "The 90-day deadline is strictly enforced against represented and pro se plaintiffs alike." Perez v. Mason Tenders District Council Trust Funds, No. 17 Civ. 1022, 2017 WL 5125542, at *2 (S.D.N.Y. Nov. 1, 2017) (collecting cases). The Court retains discretion to consider whether sufficient grounds exist to toll the filing deadlines as an equitable consideration. See Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984).

In computing the 90-day period, a complaint is properly filed if the 90-day period ends on a Sunday and the complaint is filed on the following Monday. See Kane v. Douglas, Elliman, Hollyday & Ives, 635 F.2d 141, 142 (2d Cir. 1980); Gladitsch v. Neo@Ogilvy, No. 11 Civ. 919, 2012 WL 1003513, at *5 (S.D.N.Y. Mar. 21, 2012).

In this case, Burgess received Burgess's NRTS letter on March 13, 2023, see SAC ¶ 9, and thus the 90-day time period began to run on that date. See Lin v. N.Y.C. Admin. for Children's Servs., No. 99 CIV. 10314, 2001 WL 964016, at *3

16

(S.D.N.Y. Aug. 23, 2001). Because the ninetieth day fell on a
Sunday—June 11, 2023—Burgess's filing of the complaint on
Monday, June 12, 2023, would have been timely had Burgess filed
the complaint within regular business hours, or deposited the
complaint in the District Court's Night Deposit Box. <u>See</u> Civ.
Rule 1.2. But Burgess filed the complaint with the Court's Pro
Se office by emailing the Court's Pro Se office on Monday, June
12, 2023 at 8:34 p.m. <u>See</u> SAC ¶ 10.

Local Civil Rule 1.2 establishes a night depository with
the Clerk of Court and provides that "papers for the district
court may be deposited only in the night depository[]" for
papers that are filed after "regular business hours." Civ. Rule
1.2; <u>Figueroa v. City of New York</u>, No. 07 Civ. 11333, 2008 WL
4185848, at *1 (S.D.N.Y. Sept. 4, 2008). Additionally, the
Court's Frequently Asked Questions website provides guidance for
<u>pro se</u> litigants who are unable to file prior to the court's
closure at 5:00 p.m. <u>See</u> "Pro See Frequently Asked Questions,"
<u>https://www.nysd.uscourts.gov/prose-faqs</u>. This guidance further
clarifies the process and instructs <u>pro se</u> litigants to file
papers after 5:00 p.m. in the District Court's Night Deposit
Box, located near Security in the lobby of the Courthouse.

While the 90-day filing requirement is strictly enforced,
the plaintiff did file the complaint on the date required,

namely Monday, June 12, 2023—the first business day after the ninetieth day, which landed on a Sunday. The pro se plaintiff just failed to follow the local rule that required the complaint to be placed in the Night Deposit Box rather than emailed to the Pro Se office. The defendants point to no case where a local filing rule has been used to bar a pro se plaintiff from proceeding with a complaint that was otherwise timely filed. Therefore, the defendants' motion to dismiss the complaint based on the plaintiff's failure to comply with the 90-day rule is **denied.**

In addition, the plaintiff's second EEOC charge alleges claims of discrimination and hostile work environment under Title IX, Title VII, the ADA, and the Rehabilitation Act from "Spring 2021 through Spring 2023." See ECF No. 61 at 10-12. The defendants contend that this Court should decline to consider the charges the plaintiff brought in the plaintiff's second EEOC charge because the plaintiff's filing of a second EEOC charge is procedurally improper. See Defs.' Mot. to Dismiss, ECF No. 42 at 27-29. The defendants argue that the EEOC issued a NRTS letter four days after the plaintiff filed the second charge in response to the plaintiff's request that the EEOC issue a "quick decision." See id. at 29.

This argument is not persuasive. The Second Circuit Court of Appeals has not addressed this question. See Hankins v. Lyght, 441 F.3d 96, 101 (2d Cir. 2006). But, on its face, Section 2000e-5(f)(1) does not bar the issuance of a right-to-sue letter before the expiration of the 180-day period following the filing of a charge.

Title 42 U.S.C. § 2000e-5 outlines the process the EEOC must follow after it receives a charge of discrimination. The statute provides that Commission "shall make an investigation" "[w]henever a charge is filed by . . . a person claiming to be aggrieved[.]" Id. § 2000e-5(b). Section 2000e-5(f)(1) describes the issuance of a right-to-sue letter by the EEOC, providing that if the Commission has not filed a civil action under this section, the Commission shall notify the aggrieved person "within one hundred and eighty days from the filing of such charge[.]" Id. § 2000e-5(f)(1).

Section 2000e-5(f)(1) does not prohibit the issuance of an NRTS letter before the expiration of the 180-day period following the filing of the charge. See Germain v. Nielsen Consumer, LLC, 655 F. Supp. 3d 164, 179 (S.D.N.Y. 2023). The EEOC may be inclined to grant a NRTS letter without an investigation if it believes that it cannot complete the investigation within the time period it has to issue the NRTS

letter. See Figueira v. Black Ent. Television, Inc., 944 F. Supp. 299, 304 (S.D.N.Y. 1996)(summarizing the legislative history and noting that Congress recognized that it may be "appropriate for [an] individual to institute a court action where the delay is occasioned by administrative inefficiencies").

Therefore, as the Court found in Figueira and Germain, 42 U.S.C. § 2000e-5(f)(1) does not foreclose the EEOC from issuing a notice of the right to sue prior to the 180-day deadline. See Germain, 655 F. Supp. 3d at 181; Nodelman v. Gruner & Jahr USA Pub., No. 98 CIV. 1231, 2000 WL 502858, at *5 (S.D.N.Y. Apr. 26, 2000) ("[M]any other courts, including courts within this district, have held that the EEOC may issue an early right-to-sue notice."); Huang v. Gruner + Jahr USA Pub., No. 99 CIV. 5058, 2000 WL 640660, at *2 (S.D.N.Y. May 17, 2000); Figueira, 944 F. Supp. at 304. Accordingly, the plaintiff's claims were properly exhausted and cannot be dismissed on these grounds.[4]

---

[4] The defendants argue that the claims the plaintiff raised in the second EEOC charge did not "reasonably relate" to Burgess's original EEOC charge. See ECF No. 42 at 27-28. The argument is misguided. The defendants rely on Malachi v. Postgraduate Ctr. for Mental Health, No. 10-CV-3527, 2013 WL 782614, at *2-3 (E.D.N.Y. Mar. 1, 2013) and Dingman v. Fuji Japanese Steakhouse Sushi, Inc., No. 20-cv-4850, 2022 WL 4650860, at *11 (S.D.N.Y. Sept. 30, 2022). See Defs.' Mot. to Dismiss, ECF No. 42 at 19. But in Dingman, as in Melachi, the plaintiff failed to assert certain claims before the EEOC prior to bringing those claims before the district court. See Dingman, 2022 WL 4650860, at *10. Both Dingman and Malachi deal with the separate question of whether a plaintiff can pursue a claim that has not been

**IV.**

The defendants contend that the plaintiff's claims under Title VII, the ADA, the Rehabilitation Act,[5] Title IX, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") must be dismissed as time barred. See ECF No. 42 at 16–18. The defendants also argue that the plaintiff has failed to state a claim for relief under each of these statutes.[6]

**A. Timeliness**

The plaintiff's Title VII claims and ADA claims require that the plaintiff file a charge of discrimination with the EEOC

---

raised before the EEOC if the claim is at least "related" to a claim that was raised before the EEOC. Here, Burgess brought a second EEOC charge, and there is no requirement that the claims made in the second EEOC charge must be "reasonably related" to the claims made in the first charge, in order for the claims in the second charge to be cognizable in federal court.

[5] Although neither of the plaintiff's EEOC charges refer to the Rehabilitation Act, the plaintiff alleges a violation of the Rehabilitation Act in the plaintiff's Second Amended Complaint. See ECF No. 37-1 at 4. Because the allegations under the Rehabilitation Act are reasonably related to the conduct that the plaintiff alleges violated the ADA, the plaintiff was not required to submit the claim to the EEOC. See Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) ("Claims not raised in an EEOC complaint . . . may be brought in federal court if they are 'reasonably related' to the claim filed with the agency."). The defendants do not suggest that the Rehabilitation Act claim should be dismissed because it is not exhausted.

[6] The defendants assert a procedural argument to support the motion to dismiss, namely that Burgess's Title IX and Rehabilitation Act claims must be dismissed because Burgess did not receive leave from this Court to assert new claims in Burgess's Second Amended Complaint. See Defs.' Mot. to Dismiss, ECF No. 42 at 30. This Court, however, did not restrict the basis upon which Burgess could file a Second Amended Complaint.

21

within 300 days of the alleged discriminatory acts. See
Toussaint v. City of New York, No. 19 Civ. 1239, 2020 WL
3978317, at *3 (S.D.N.Y. June 29, 2020)(citing Flaherty v.
Metromail Corp., 235 F.3d 133, 136 n.1 (2d Cir.
2000))(addressing Title VII claims); Harris v. City of New York,
186 F.3d 243, 247-48 (2d Cir. 1999)(addressing ADA claims).
Because Burgess filed a charge of discrimination with the EEOC
on June 9, 2022, see SAC ¶ 8, any allegation of discrimination
or retaliation under Title VII or the ADA that occurred before
August 13, 2021 is time barred.

The plaintiff's Title IX claims, Rehabilitation Act claims,
and claims under the NYSHRL and the NYCHRL alleging
discrimination or retaliation, are time-barred unless filed
within three years of the alleged discriminatory acts. See
Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 238 (2d
Cir. 2007)(addressing the NYSHRL and the NYCHRL claims); Harris,
186 F.3d at 247-48 (addressing Rehabilitation Act claims); Curto
v. Edmundson, 392 F.3d 502, 504 (2d Cir. 2004)(per
curiam)(applying three-year statute of limitations to Title IX
claim from "the time the cause of action accrued"); Doe v.
National Ramah Commission, Inc., 2018 WL 4284324, at *5
(S.D.N.Y. Sept. 7, 2018)(addressing Title IX claims). Because

the plaintiff's complaint was filed on June 12, 2023, see SAC ¶ 10, the acts that occurred before June 12, 2020 are time barred.

An exception to this rule arises under the "continuing violation" doctrine, which holds that if there is evidence of an ongoing discriminatory policy or practice, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it. Chin v. Port Auth. of N.Y. and N.J., 685 F.3d 135, 155–56 (2d Cir. 2012) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110–11 (2002)). However, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Morgan, 536 U.S. at 113. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." Id.

Time-barred "discrete discriminatory acts" are distinguished from claims that allege a hostile work environment, which are "timely so long as one act contributing to the claim occurred within the statutory period[.]" Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 220 (2d Cir. 2004). For claims alleging a hostile work environment, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Id. But, "the mere fact than an employee was dismissed within the statutory period

23

cannot be used 'to pull in a time-barred discriminatory act' . .
. for 'continuity of employment, without more, is insufficient
to prolong the life of a cause of action for employment
discrimination." Patterson, 375 F.3d at 220 (citing Morgan, 536
U.S. at 112-13).

The plaintiff has alleged facts that occurred outside the
300-day statute of limitations period for the Title VII and the
ADA claims, and even outside the three-year statute of
limitations for the Title IX, Rehabilitation Act, and state law
claims. In particular, the critical evaluations of the plaintiff
in 2015 and 2017, see SAC ¶¶ 29, 33, and the assignment to an
inappropriate classroom in 2018, see id. ¶ 36, all occurred
outside even the three-year statute of limitations. And,
Wolkoff's Second Report in January 2020, in which Wolkoff
allegedly misgendered the plaintiff occurred outside even the
three-year statute of limitations. See id. ¶ 39.

Each of these incidents was a discrete incident and cannot
be actionable simply by characterizing each of them as part of a
continuing violation. See Morgan, 536 U.S. at 113; Isbell v.
City of New York, 316 F. Supp. 3d 571, 585-86 (S.D.N.Y. 2018);
Samuels v. City of New York, No. 22-cv-1904, 2023 WL 5717892, at
*5 (S.D.N.Y. Sept. 5, 2023). But there are some particular
instances of alleged adverse action that fell within even the

24

300-day statute of limitations, namely the plaintiff's suspension and termination and the plaintiff's assignments to allegedly inappropriate classrooms, and the plaintiff's requirement to teach allegedly burdensome courses. See, e.g., SAC ¶¶ 72, 91, 37.

### B. Title VII - Discrimination and Retaliation

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a). Title VII prohibits employers from mistreating an employee because of the individual's protected characteristics, Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007), or retaliating against an employee who has opposed any practice made unlawful by those statutes, see Crawford v. Metro. Gov't, 555 U.S. 271, 276 (2009).

Where, as here, a plaintiff brings claims of employment discrimination under Title VII, the plaintiff must allege at the pleadings stage that "the employer took adverse action against [the plaintiff] at least in part for a discriminatory reason, and [the plaintiff] may do so by alleging facts that directly

show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 87 (2d Cir. 2015).

"An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." <u>Id.</u> As to the second element, absent direct evidence of intent to discriminate, the plaintiff may prove discrimination "by indirectly showing circumstances giving rise to an inference of discrimination." <u>Id.</u> at 87.

To the extent that Burgess relies on Burgess's placement on a PIP as an adverse action, Burgess was placed on a PIP in April 2021, outside the statute of limitations and therefore this action was not the basis for a timely claim of discrimination. <u>See</u> SAC ¶ 47. In any event, being subject to a performance improvement plan, without more, is insufficient for establishing a claim under Title VII. <u>See</u> <u>Brown v. Am. Golf Corp</u>, 99 F. App'x 341, 343 (2d Cir. 2004)("We conclude that being instructed to follow the requirements of the Performance Improvement Plan did not constitute an adverse employment action"); <u>Ziyan Shi v. N.Y. Dept. of State, Division of Licensing Services</u>, 393 F. Supp. 3d 239, 338 (S.D.N.Y. 2019).

Burgess's suspension and termination were plainly adverse employment actions and not barred by the statute of limitations, but there are no plausible factual allegations to show that either the suspension or termination was based on Burgess's gender identity. There was no direct evidence of such improper conduct and no circumstantial evidence. The only comment that involved misgendering by Wolkoff occurred years before the suspension and termination. See SAC ¶ 39. And, the suspension and termination occurred only after an extensive Title IX process and the plaintiff's failure to comply with the PIP. See, e.g., id. ¶¶ 72, 84, 86. The plaintiff has failed to allege any facts to show that the process was motivated by the plaintiff's gender identity.

Burgess relies on an argument that two comparators who did not share the same gender identity with the plaintiff were treated more favorably than the plaintiff. Burgess alleges that in the fall of 2022, a faculty member named Vince Cianni ("Cianni") was investigated by TNS for students' concerns regarding "word usage" in Cianni's class syllabus. Id. ¶ 83. Burgess alleges that Cianni resigned from teaching the course, but no PIP or workshops were required by TNS. Id. Burgess alleges that Burgess was treated differently from Cianni. Id.

Burgess also alleges that Burgess was treated differently from part-time faculty Laurie Sheck ("Sheck"). Id. Burgess alleges that TNS opened an investigation regarding Sheck after Sheck used the "N-word" during a graduate class discussion, quoting James Baldwin's use of the word. Id. TNS determined that Sheck did not violate the university's policies on discrimination. Id.

But neither alleged comparator is sufficiently similarly situated to the plaintiff to have any evidentiary value. Burgess claims that both Sheck and Cianni used inappropriate words while teaching a class. See id. ¶ 83. But Burgess later attaches an affidavit signed by Cianni, stating that he was disciplined for his language, see ECF No. 53 at 73, and Burgess alleges that "TNS opened an investigation" on Sheck after she used an inappropriate word in a class, see SAC ¶ 83. Cianni's own admission that he was disciplined negates any inference of discrimination, as does TNS's investigation into Scheck's conduct. Moreover, the history of critical comments about Burgess's performance over the years distinguishes Burgess's record from that of Burgess's two alleged comparators.

In short, Burgess has failed to allege sufficient plausible facts to show that TNS took any adverse actions against Burgess under circumstances giving rise to an inference of

discrimination. See Franchino v. Terence Cardinal Cook Health
Care Ctr., Inc., 692 F. App'x 39, 42–43 (2d Cir. 2017); Dooley
v. JetBlue Airways Corp., 636 F. App'x 16, 20 (2d Cir.
2015)(affirming dismissal of Title VII claim alleging sex
discrimination and noting that "a discrimination complaint ...
must still at a minimum assert nonconclusory factual matter
sufficient to nudge its claims across the line from conceivable
to plausible to proceed."); see also Vega, 801 F.3d at 86–87.

With respect to Burgess's claim of retaliation under Title
VII, "[t]o state a claim for retaliation . . . a plaintiff must
plead facts that would tend to show that: (1) [the plaintiff]
participated in a protected activity known to the defendant; (2)
the defendant took an employment action disadvantaging [the
plaintiff]; and (3) there exists a causal connection between the
protected activity and the adverse action." Patane, 508 F.3d at
115.

Burgess engaged in various protected activities, including
the filing of the first EEOC charge on June 9, 2022. See SAC ¶
8. However, the plaintiff has failed to point to the specific
actions that TNS took in retaliation for any protected
activities. The plaintiff has failed to point to any direct
evidence of retaliation. Moreover, there are no factual
allegations that the specific actions that TNS took such as

Burgess's suspension in December 2021 and the termination in April 2023, occurred under circumstances giving rise to an inference of retaliation. Rather, the events followed a long history of progressive critiques of the plaintiff, which dated as least to November 2015. See, e.g., id. ¶¶ 29, 39, 41, 47.

Where progressive discipline began before a protected activity, there is no reasonable inference that the continuation of that activity after the protected activity was caused at all by the protected activity. Slattery v. Swiss Reins. Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001)("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."); Forrest v. N.Y.C. Hous. Authority, No. 22-cv-6480, 2023 WL 3203646, at *9 (S.D.N.Y. May 2, 2023) (recognizing that "[a]lthough Slattery was decided on a summary judgment motion, courts routinely apply the Second Circuit's holding regarding causation in Slattery on motions to dismiss")(collecting cases). Therefore, the plaintiff has failed to plead a plausible claim of retaliation in violation of Title VII.

Accordingly, the defendants' motion to dismiss Burgess's claim of employment discrimination and retaliation in violation of Title VII is **granted.**

30

## C. ADA – Discrimination, Retaliation, and Failure-to-Accommodate

Burgess also alleges discrimination, retaliation, and failure-to-accommodate claims in violation of the ADA. See SAC ¶ 95; ECF No. 37-1 at 5.

The ADA provides that a covered employer "shall [not] discriminate against a qualified individual on the basis of disability in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); Fox v. Costco Wholesale Corp., 918 F.3d 65, 74 (2d Cir. 2019). Disability discrimination claims under the ADA "may be brought under a theory of adverse employment action or of failure to provide reasonable accommodation." Piligian v. Icahn Sch. of Med. at Mount Sinai, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020).

To set forth a prima facie case of disability discrimination based on an adverse employment action, a plaintiff must demonstrate that "(1) [the plaintiff's] employer is subject to the ADA; (2) [the plaintiff] was disabled within the meaning of the ADA; (3) [the plaintiff] was otherwise qualified to perform the essential functions of [the plaintiff's] job, with or without reasonable accommodation; and (4) [the plaintiff] suffered [an] adverse employment action because of [the plaintiff's] disability." Krasner v. City of New York, 2013 WL 5338558, at *11 (S.D.N.Y. Sept. 23, 2013) (quoting

31

<u>Heyman v. Queens Vil. Comm. For Mental Health for Jamaica Cmty.</u>
<u>Adolescent Program, Inc.</u>, 198 F.3d 68, 72 (2d Cir. 1999)).
"[T]he standard to be applied to [a plaintiff's] employment
discrimination claims [under the ADA] must be that 'but for' the
disability, the adverse action would not have been taken."
<u>Natofsky v. City of New York</u>, 921 F.3d 337, 352 (2d Cir. 2019).

Burgess has not alleged any facts to state a plausible
claim of disability discrimination. Burgess claims that TNS took
adverse action against Burgess by assigning Burgess new courses
and unsatisfactory classrooms, suspending Burgess, and
ultimately terminating Burgess. Burgess claims that TNS took
these actions for discriminatory reasons based on Burgess's
disabilities. But, Burgess points to no direct evidence of the
defendants' intent to discriminate on the basis of Burgess's
alleged disabilities and instead alleges that discrimination can
be inferred from TNS's failure to accommodate Burgess's
classroom and teaching requests. <u>See</u> Pl.'s Opp. at 11, 24-25.

The history of Burgess's interactions with TNS do not
support an allegation of discrimination based on Burgess's
disabilities. Burgess alleges that as early as September 2016,
Burgess was assigned to teach in a "small, cramped room without
windows," <u>see</u> SAC ¶ 31, and in the fall 2017, Burgess was
assigned to teach a new course, <u>see id.</u> ¶ 33. These events

occurred before Burgess received a diagnosis of claustrophobia anxiety disorder in 2018, and Burgess's doctor made an ADA request for accommodation. See id. ¶¶ 31, 35. These events also occurred outside any statute of limitations. Furthermore, TNS engaged in a long interactive process with Burgess, which ultimately resulted in Burgess's suspension and termination. See, e.g., id. ¶¶ 50, 51, 52, 54, 56. There are no factual allegations to support a conclusion that TNS took an adverse action against the plaintiff because of Burgess's disabilities.

Any such inference of discrimination is further diminished by the performance-based evaluations Burgess received prior to Burgess's claim of discrimination, including the First Report in November 2015, see id. ¶ 29, Burgess's sabbatical in response to the First Report, id., and the second warning in 2017, id.; see De Figueroa v. New York, 403 F. Supp. 3d 133, 160 (E.D.N.Y. 2019) ("The fact that the plaintiff may be a member of a protected group and something happens to [the plaintiff] that [the plaintiff] does not like is not nearly sufficient to constitute an employment discrimination claim") (dismissing disability discrimination claim).

Burgess has also failed to allege retaliation under the ADA. To make out a prima facie case of retaliation under the ADA, a plaintiff must show that the plaintiff "engaged in an

33

activity protected by the ADA," that the plaintiff's "employer was aware of this activity," that the employer took "adverse employment action against [the plaintiff]," and that a "causal connection exists between the alleged adverse action and the protected activity." MacEntee v. IBM (Int'l Bus. Machs.), 783 F. Supp. 2d 434, 446 (S.D.N.Y. Mar. 3, 2011).

As with the alleged retaliation claim under Title VII, the plaintiff has failed to plead a plausible claim of retaliation under the ADA. The plaintiff plainly engaged in protected activity under the ADA by requesting accommodations and in the course of employment Burgess suffered adverse actions such as Burgess's suspension and termination. But Burgess received negative performance evaluations prior to any request for accommodation, see SAC ¶ 29, and Burgess failed to plead any direct evidence or any circumstantial evidence to support a causal connection between the protected activity and the adverse action. See Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999) (affirming dismissal of ADA retaliation claim when there was no evidence that employer's actions were "causally related" to the allegedly retaliatory conduct); Nieblas-Love v. N.Y.C. Hous. Auth., 165 F. Supp. 3d 51, 75 (S.D.N.Y. 2016) (dismissing ADA retaliation claim when the plaintiff provided "no evidence to suggest that [the

plaintiff's] termination—which is indisputably an adverse employment action—was in any way connected to [the plaintiff's] requests for additional accommodations."); see also Sharikov v. Philips Med. Sys. MR, Inc., 659 F. Supp. 3d 264, 284-85 (N.D.N.Y 2023) (dismissing ADA retaliation claim when the alleged adverse action occurred prior to the plaintiff's alleged instance of protected conduct). The defendants' motion to dismiss Burgess's claims of employment discrimination and retaliation pursuant to the ADA is therefore **granted.**

Burgess next alleges that the defendants violated the ADA by failing to accommodate Burgess's requests for a new classroom and Burgess's requests for no new teaching assignments. To state a claim under the ADA based on a failure-to-accommodate theory, the plaintiff must allege that: (1) the plaintiff "is a person with a disability" as defined in the ADA; (2) "an employer covered by the statute had notice of [the] disability"; (3) "with reasonable accommodations, [the] plaintiff could perform the essential functions of the job at issue"; and (4) the covered employer "refused to make such accommodations." Piligian, 490 F. Supp. 3d at 17; Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006).

TNS does not dispute that Burgess has a disability as defined in the ADA and that TNS was on notice of the disability.

35

The allegations in the complaint indicate that Burgess's doctor informed TNS at various times that Burgess had claustrophobia anxiety disorder, a panic disorder, and PTSD, and requested appropriate classrooms and "no new courses." SAC ¶¶ 45–52; see also id. at ¶ 45. Burgess alleges that TNS denied Burgess's request to reconsider Burgess's ADA accommodation request that Burgess be assigned to teach no "new courses." SAC ¶¶ 57, 58. As a result, Burgess alleges that Burgess's "disability worsened." Id. ¶ 65. Burgess further alleges that Burgess provided an updated assessment of Burgess's disability to the defendants, and a psychologist's recommendation that Burgess teach "no new courses." Id. ¶ 85. The psychologist stated that "[t]he accommodation of no new courses would have allowed [Burgess] to continue teaching." Id. During this period, TNS declined to accommodate Burgess's request that no new courses be assigned, see id. ¶¶ 54, 59, and declined to assign Burgess a suitable classroom, see id. ¶¶ 36, 37.

Based on these allegations, Burgess has plausibly alleged that TNS failed to provide reasonable accommodations for Burgess's disabilities. Burgess provided a letter from a psychologist that stated that "[t]he accommodation of no new courses would have allowed [Burgess] to continue teaching[,]" SAC ¶ 85, and the parties dispute whether Burgess could "perform

the essential functions of the job at issue" if the defendants provided Burgess with the requested accommodation. See Graves, 457 F.3d at 183. "[T]he nature of a job's essential functions is a fact-bound question ill-suited for resolution on a motion to dismiss[.]" Crosby v. Stew Leonard's Yonkers LLC, 695 F. Supp. 3d 551, 570 (S.D.N.Y. 2023) (citing Lewis v. Livingston Cnty. Ctr. for Nursing & Rehab., 30 F. Supp. 3d 196, 211 (W.D.N.Y. 2014) (collecting cases and concluding that whether an accommodation is reasonable is a question "better reserved for summary judgment or trial rather than the pleading stage")). Therefore, the defendants' motion to dismiss the ADA failure-to-accommodate claim is **denied.**

### D. Title IX – Discrimination and Retaliation

Burgess alleges gender discrimination and retaliation in violation of Title IX. "Title VII and Title IX are governed by the same substantive standards for reviewing claims of both harassment and retaliation." Summa v. Hofstra Univ., 708 F.3d 115, 131 (2d Cir. 2013); Murray v. N.Y. Univ. Coll. of Dentistry, 57 F.3d 243, 248 (2d Cir. 1995).

Title IX generally provides, with certain exceptions, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or

activity receiving Federal financial assistance . . ..″ 20
U.S.C. § 1681(a). Title IX allows a private right of action for
a university's intentional gender-based discrimination against a
faculty member. See Vengalattore v. Cornell Univ., 36 F.4th 87,
113 (2d Cir. 2022).[7]

To survive a Rule 12(b)(6) motion to dismiss, Burgess must
allege that Burgess was "within the protected class, was
qualified for the position, and was subjected to an adverse
action[.]" Id. at 103. Burgess must allege facts "giving rise to
a plausible minimal inference of bias on the basis of sex." Id.;
see also Doe v. Columbia Univ., 831 F.3d 46, 56 (2d. Cir. 2016)
(holding that a complaint under Title IX alleging discrimination
on account of sex must plead "specific facts that support a
minimal plausible inference of such discrimination").

In this case, the Title IX allegations in the Second
Amended Complaint that are not barred by the statute of
limitations include Burgess's initiation of a Title IX process

---

[7] The defendants argue that there is no private right of action under
Title IX. See Defs.' Mot. to Dismiss, ECF No. 42 at 23. But, in
Vengalattore, the Second Circuit Court of Appeals held that a private
right of action under Title IX is "implied in a variety of
circumstances." See 36 F.4th at 104. Among these circumstances, the
Court of Appeals held that Title IX provides a private right of action
for plaintiffs who allege gender-based employment discrimination
against federally funded education programs. See id. The Court
therefore concluded that "Title IX allows a private right of action
for a university's intentional gender-based discrimination against a
faculty member[.]" Id. at 106.

with TNS on September 8, 2023, see SAC ¶ 62, to complain of

"willful acts of discrimination by Katherine Wolkoff," based on

the Second Report, in which Wolkoff allegedly "repeatedly

misgendered" Burgess in January 2020. SAC ¶ 39.[8] Because the

statute of limitations bars claims that arise from conduct that

occurred prior to June 12, 2020, Burgess's claim that Wolkoff

"misgendered" Burgess in the Second Report is time barred.

In any event, as is true of the claim for a violation of

Title VII, Burgess has failed to show that Burgess was subjected

to any intentional gender-based discrimination. Wolkoff's single

episode of misgendering is unrelated to any substantive adverse

action against the plaintiff. There is also no direct or

circumstantial evidence to support an inference that the

plaintiff was deprived of an educational benefit based on sex.

To the extent that the plaintiff is complaining about how

the Title IX process was conducted at TNS, Burgess has failed to

allege sufficient plausible facts to support an inference of

discrimination based on Burgess's gender. Instead Burgess relies

on conclusory allegations that the Title IX process was flawed,

but alleges no facts to show discriminatory animus based on sex.

---

[8] While Burgess alleged several other incidents of misgendering in
response to the motion to dismiss, those allegations are not in the
Second Amended Complaint and, in any event, do not support an
inference that TNS took an adverse action against the plaintiff based
on such misgendering.

39

"As our cases have long held, such an allegation of erroneous outcome, absent any additional allegations of fact indicating bias on account of sex, does not state a claim under Title IX." Roe v. St. John's Univ., 91 F. 4th 643, 653–54 (2d Cir. 2024). The defendants' motion to dismiss Burgess's Title IX claim of discrimination is therefore **granted.**

With respect to Burgess's claim of retaliation for engaging in the Title IX process, Burgess's claim is governed by the same standard set forth to state a claim of retaliation under Title VII. Summa, 708 F.3d at 131. To overcome a motion to dismiss, Burgess must allege an adverse action against Burgess that shared a causal connection with Burgess's Title IX complaint. See Sutton v. Stony Brook Univ., No. 21-2055, 2022 WL 4479509, at *3 (2d Cir. Sept. 27, 2022). Burgess has alleged insufficient facts to support such causation. Instead, Burgess's allegations make clear that Burgess was terminated after a lengthy process for failing to comply with the PIP. Burgess was initially reprimanded as a result of Burgess's teaching performance—well before Burgess's subsequent Title IX complaint. See, e.g., SAC ¶¶ 29, 39. Taken as a whole, therefore, Burgess's allegations of retaliation under Title IX are conclusory and unsupported by any plausible factual allegations. Therefore, the defendants' motion to dismiss this claim is **granted.**

### E. Rehabilitation Act – Discrimination, Retaliation, and Failure-to-Accommodate

Burgess claims that the defendants violated the Rehabilitation Act by discriminating against Burgess based on Burgess's disabilities, by retaliating against Burgess for seeking a disability accommodation, and by failing to provide a reasonable accommodation for Burgess's disabilities.[9]

Burgess supplements the conduct that is within the statute of limitations for an ADA claim with additional allegations that Burgess requested to teach in a large classroom and that Burgess not teach new classes because of Burgess's diagnoses of claustrophobia anxiety, generalized anxiety disorder, and PTSD. All of the allegations indicate that Burgess requested accommodations to teach in a large classroom with windows and that Burgess teach no new courses. These requested accommodations were supported by Burgess's doctors, and neither accommodation was granted by TNS.

---

[9] The defendants argue that Burgess has failed to assert a claim that is cognizable under the Rehabilitation Act because the plaintiff has failed to allege that TNS receives federal funding. See Defs.' Mot. to Dismiss, ECF No. 42 at 23. But Burgess points to the TNS website, which indicates that the institution receives federal funding, and provides the federal identification number for TNS in Burgess's opposition papers. See Pl.'s Opp'n, ECF No. 53 at 11. Assuming that TNS has accepted federal funds, it is appropriate to examine the plaintiff's claims pursuant to the Rehabilitation Act. See Mone v. N.Y. State Unified Ct. Sys., No. 21 CV 6914, 2023 WL 4424093, at *7–8 (E.D.N.Y. Mar. 22, 2023).

Disability discrimination and retaliation claims under the Rehabilitation Act are analyzed under the same standard used for ADA discrimination claims. See Quadir v. N.Y. State Dep't of Labor, 39 F. Supp. 3d 528, 537, 538 (S.D.N.Y. 2014); (Rehabilitation Act); see also Natofksy, 921 F.3d at 345 (requiring the plaintiff to plead that discrimination was the "but-for" cause of any adverse employment action under the ADA and the Rehabilitation Act). Failure-to-accommodate claims are also analyzed under the same standard as the ADA. Id. at 352.

Under the Rehabilitation Act, it is unlawful for "a covered entity not to make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business." 29 C.F.R. § 1630.9(a); Lee v. Saul, No. 19-CV-6553, 2020 WL 7029264, at *3 (S.D.N.Y. Aug. 31, 2020), report and recommendation adopted as modified, No. 19 Civ. 65553, 2020 WL 5836513 (S.D.N.Y. Sept. 30, 2020).

Burgess's claim of discrimination under the Rehabilitation Act is dismissed for substantially the same reason that Burgess's claim of discrimination under the ADA is dismissed. The plaintiff has failed to allege any direct evidence that any

adverse action was caused by the plaintiff's disabilities and there is no circumstantial evidence supporting such an inference. The plaintiff's termination came after extensive efforts to get the plaintiff to comply with a PIP and the plaintiff's ultimate refusal to comply. Burgess has alleged no facts to support an inference that Burgess's termination was caused by Burgess's disabilities.

Likewise, for substantially the same reasons that Burgess's retaliation claim under the ADA must be dismissed, Burgess has failed to allege a sufficient retaliation claim under the Rehabilitation Act. Burgess has failed to allege that a "causal connection" exists between Burgess's requests for accommodation and Burgess's termination. Accordingly, the defendants' motion to dismiss Burgess's discrimination and retaliation claims under the Rehabilitation Act is **granted**.

With respect to Burgess's failure-to-accommodate claim under the Rehabilitation Act, Burgess has adequately pleaded facts to show that TNS failed to make a reasonable accommodation for Burgess's requests for a larger classroom and course assignment modifications.

Regarding Burgess's request for a classroom modification, Burgess alleges that TNS made no attempt to accommodate this request, and instead assigned Burgess "a small, noisy classroom

without heat." SAC ¶ 37. Additionally, Burgess's doctors repeatedly requested that Burgess be assigned no new classes and instead be permitted to teach the courses Burgess usually taught. See id. ¶¶ 49, 45. Burgess alleges that these accommodations would have permitted Burgess to perform the "essential functions of the job at issue." Id. ¶ 49. Therefore, for the purposes of a motion to dismiss, Burgess has sufficiently alleged that the defendants failed to make a reasonable accommodation. See Crosby, 695 F. Supp. 3d at 570. The defendants' motion to dismiss the Rehabilitation Act claim under a failure-to-accommodate theory is **denied.**

### F. The NYSHRL and the NYCHRL — Discrimination, Retaliation, and Failure-to-Accommodate

Prior to 2019, discrimination claims brought under the NYSHRL were analyzed based on the same standard as a plaintiff's federal discrimination claims. See, e.g., Vargas v. Morgan Stanley, 438 F. App'x 7, 9 (2d. Cir. 2011); Kinneary v. City of New York, 601 F.3d 151, 158 (2d Cir. 2010).

However, the NYSHRL was amended in 2019. See 2019 N.Y. Sess. Laws chap. 160. As amended, the NYSHRL must "be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the

44

provisions of this article, have been so construed." N.Y. Exec. Law § 300 (2023).

New York courts have not yet produced any substantive analysis of how this amendment changes standards of liability under the NYSHRL, but courts in this District have interpreted the amendment as "render[ing] the standard for claims closer to the standard of the NYCHRL." Livingston v. City of New York, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021); Kaye v. N.Y.C. Health & Hosps. Corp., No. 18 Civ. 12137, 2023 WL 2745556, at *17 (S.D.N.Y. Mar. 31, 2023); de Souza v. Planned Parenthood Fed'n of Am., Inc., No. 21 Civ. 5553, 2023 WL 2691458, at *11 (S.D.N.Y. Mar. 29, 2023)("[T]he standard for NYSHRL claims is closer to the standard of the NYCHRL."). The Court will therefore apply the more liberal NYCHRL standard to Burgess's NYSHRL discrimination and retaliation claims for purposes of this Memorandum Opinion and Order. See Mercado v. Mount Sinai Beth Israel, No. 21-cv-10467, 2023 WL 5975322, at *12 (S.D.N.Y. Sept. 14, 2023).

The NYCHRL and post-amendment NYSHRL are less demanding of plaintiffs than Title VII for discrimination claims. See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013). As with Title VII, however, neither the NYSHRL nor NYCHRL is "a general civility code," and "where a plaintiff

45

fails to demonstrate that the defendant's conduct was caused at least in part by discriminatory or retaliatory motive, or the defendant demonstrates that the alleged conduct did not exceed petty slights or trivial inconveniences, [the] plaintiff's claim must fail." Livingston, 563 F. Supp. 3d at 234.

In this case, for Burgess's discrimination claims under the NYCHRL and the NYSHRL, Burgess must allege "differential treatment—that [Burgess] was treated 'less well'—because of a discriminatory intent." Mercado, 2023 WL 5975322, at *12 (quoting Mihalik, 715 F.3d at 110). Where, as here, Burgess does not plead any direct evidence of discriminatory intent, Burgess can raise an inference of discrimination by demonstrating the disparate treatment of at least one similarly situated employee outside the protected group and sufficient facts from which it may reasonably be inferred that "the plaintiff's and comparator's circumstances bear a reasonably close resemblance." Kirkland-Hudson v. Mount Vernon City Sch. Dist., 665 F. Supp. 3d 412, 453–54 (S.D.N.Y. 2023).

Regarding Burgess's allegations of discrimination and retaliation under the NYSHRL and the NYCHRL, the statute of limitations bars conduct that occurred prior to June 12, 2020. And, Burgess has not alleged facts in the relevant time period establishing that Burgess was treated any differently from

46

others who did not share Burgess's gender or disabilities. As
discussed above, Burgess's alleged comparators were investigated
by the defendants for alleged improper conduct, just as Burgess
was. See SAC ¶¶ 83-84. But Burgess had a far greater history of
alleged disciplinary issues compared to the alleged comparators.
And Burgess failed to allege any facts that give rise to an
inference of discriminatory motivation—based on Burgess's gender
or disabilities—even under the NYCHRL's "minimal" pleading
standard. See Harte v. Pace Univ., No. 22-cv-3820, 2024 WL
1348700, at *7 (S.D.N.Y. Mar. 29, 2024).

For retaliation claims under the NYCHRL and post-amendment
NYSHRL, a plaintiff must at least demonstrate that the plaintiff
"took an action opposing [the plaintiff's] discrimination, and
that, as a result, the employer engaged in conduct that was
reasonably likely to deter a person from engaging in such
action." Livingston, 563 F. Supp. 3d at 246 (quoting Mihalik,
715 F.3d at 112). Even under this standard the plaintiff must
establish a "causal link"—"that there was a causal connection
between [the plaintiff's] protected activity and the employer's
subsequent action, and must show that a defendant's legitimate
reason for [the defendant's action] was pretextual or motivated
at least in part by an impermissible motive." Mercado, 2023 WL

5975322, at *16 (quoting <u>Hughes v. Twenty-First Century Fox,</u>
<u>Inc.</u>, 304 F. Supp. 3d 429, 449 (S.D.N.Y. 2018)).

In this case, for the reasons discussed above, Burgess has
failed to allege any facts to support the inference that a
causal connection exists between any complaint by Burgess about
gender identity and any subsequent action. The defendants
engaged in a lengthy interactive process and denied Burgess's
Title IX complaint only after interviewing Burgess and
investigating the issue. There are no factual allegations to
support Burgess's claim that Burgess's suspension or termination
was motivated—in any way—by Burgess's complaint of gender-based
discrimination.

With respect to Burgess's claim of retaliation based on
Burgess's disabilities, Burgess has failed to allege any facts
to support the inference that a causal link exists between
Burgess's efforts to seek accommodation for Burgess's
disabilities, and any subsequent action. The defendants engaged
in an interactive process to address Burgess's request for
reasonable accommodations, and prior to terminating Burgess's
employment in April 2023, the defendants provided Burgess with
an opportunity to meet with the defendants to discuss "what, if
any, accommodations could be provided so that [Burgess] [could]
perform the required functions related to the PIP." SAC ¶ 88.

48

Burgess did not respond to the defendants' request for a meeting. There is no factual allegation to support Burgess's claim that Burgess's termination was motivated by Burgess's request for reasonable accommodation.

Accordingly, the defendants' motion to dismiss Burgess's retaliation and discrimination claims under the NYSHRL and the NYCHRL is **granted.**

Finally, because Burgess pleaded sufficient facts to survive a motion to dismiss Burgess's failure-to-accommodate claims under the ADA and the Rehabilitation Act, Burgess's failure-to-accommodate claims under the NYSHRL and the NYCHRL also survive. The NYSHRL and the NYCHRL are at least as protective as the ADA and the Rehabilitation Act, and therefore a plaintiff who states a failure-to-accommodate claim under the ADA and the Rehabilitation Act necessarily states a failure-to-accommodate claim under the NYSHRL and the NYCHRL. See Berger v. N.Y.C. Police Dept., 304 F. Supp. 3d 360, 372 (S.D.N.Y. 2018); see also Torres v. MMS Grp., LLC, No. 22 Civ 6142, 2024 WL 3274310, at *3 (S.D.N.Y. July 2, 2024) ("The elements necessary to state [a failure-to-accommodate] claim under Title II of the ADA . . . RA, NYSHRL, and NYCHRL are substantially the same."). The defendants' motion to dismiss the plaintiff's failure-to-

accommodate claims under the NYSHRL and the NYCHRL is therefore **denied**.

**V.**

Burgess alleges claims of hostile work environment under Title VII, Title IX, the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL. The defendants contend that Burgess's claims must be dismissed because Burgess has failed to allege a plausible claim of hostile work environment based on the plaintiff's gender identity or disabilities.

Burgess's claims that allege a hostile work environment are "different in kind from discrete acts," see Morgan, 536 U.S. at 115, and therefore the statutes of limitations do not bar this Court from reviewing alleged conduct that occurred outside the relevant filing periods. See Lovallo v. N.Y.C. Dep't of Educ., No. 23-cv-834, 2024 WL 1329793, at *9 (S.D.N.Y Mar. 27, 2024) (citing Morgan, 536 U.S. at 117). "If any one act contributing to the claim occurs within the applicable time frame, then the Court may consider acts that on their own would have been time barred, as long as at least one alleged act occurred within the prescribed time frame." Id. This is because "an employer can create a hostile environment through a series of discriminatory occurrences that transpire over days and years." King v. Aramak Serv. Inc., 96 F.4th 546, 561 (2d Cir. 2024).

Accordingly, it is necessary to consider Burgess's allegations regarding hostile work environment that fall outside the applicable time frame, as long as at least one alleged act occurred within the prescribed time period.

With respect to Burgess's federal claims, to prevail on a hostile work environment claim Burgess must show that the defendants' conduct "(1) was objectively severe or pervasive, (2) created an environment that was subjectively perceived as hostile or abusive, and (3) created such an environment 'because of' the plaintiff's [protected characteristic]." Dimps v. N.Y. State Dep't of Corr. and Cmty. Supervision, No. 17-CV-8806, 2024 WL 1443095, at *3 (S.D.N.Y. Apr. 3, 2024) (dismissing a pro se plaintiff's Title VII hostile work environment claim) (quoting Alvarado v. Mount Pleasant Cottage Sch. Dist., 404 F. Supp. 3d 763, 780 (S.D.N.Y. 2019)). The misconduct alleged must be "severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." Alfano v. Costello, 294 F.3d 365, 374 (2d. Cir. 2002); see also Pistello v. Bd. of Educ. of Canastota Cent. Sch. Dist., 808 F. App'x 19, 23–24 (2d Cir. 2020) (applying the same standard to evaluate claims for hostile work environment under the ADA and the Rehabilitation Act); see Papelino v. Albany Coll. of Pharmacy of Union Univ.,

633 F.3d 81, 89 (2d Cir. 2011) (adopting the Title VII hostile work environment jurisprudence in the Title IX context).

A plaintiff alleging a hostile work environment claim must demonstrate "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [the plaintiff's] working environment." Fox, 918 F.3d at 74. The Court must consider "the totality of the circumstances to determine whether [the] plaintiff has met this burden[.]" Id. Because "[e]veryone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude[,] [i]t is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination." Alfano, 294 F.3d at 377. "Otherwise, the federal courts will become a court of personnel appeals." Id.

### A. Federal Hostile Work Environment Claims – Gender Discrimination

With respect to Burgess's Title VII and Title IX claims of hostile work environment based on Burgess's gender-identity, Burgess has failed to plead facts sufficient to support the conclusion that Burgess was faced with a hostile work environment based on this protected characteristic.

As an initial matter, many of Burgess's claims, including Burgess's interaction with students regarding purported bigotry are irrelevant to the plaintiff's claim of a hostile work environment because they do not support an allegation of a hostile work environment based on the misattribution of gender identity. See, e.g., SAC ¶¶ 29-30. Burgess alleges that one of the TNS administrators—the Photography Program Chair, Katherine Wolkoff—misgendered Burgess in a single report in January 2020. See SAC ¶¶ 38-39. But there is no allegation that this incident led to other instances of hostile conduct, nor that Wolkoff's report can be considered "severe or pervasive" as a single event. See Pattanayak v. Mastercard, Inc., No. 22-1411, 2023 WL 2358826, at *4 (2d Cir. Mar. 6, 2023)(affirming the dismissal of hostile work environment claims under Title VII and the ADA that "do not amount to severe or pervasive conduct"); see also Roe, 91 F.4th at 661-62 (affirming the dismissal of a Title IX hostile work environment claim when the conduct alleged was not more than "episodic"); Davis v. State Univ. of N.Y. Coll., No. 15-CV-600, 2019 WL 1349280, at *5 (W.D.N.Y. Mar. 26, 2019) (a single use of a wrong pronoun, "even if intended to discriminate, cannot support an inference of gender discrimination or a hostile work environment.").

Apart from this incident, Burgess alleges no other conduct that constitutes a hostile work environment based on Burgess's gender.[10] Therefore, the defendants' motion to dismiss Burgess's hostile work environment claims based on gender discrimination under Title VII and Title IX is **granted**.

### B. Federal Hostile Work Environment Claims – Disability Discrimination

With respect to Burgess's claims of hostile work environment under the ADA and the Rehabilitation Act, the defendants argue that Burgess has failed to state a plausible hostile work environment claim because Burgess alleges conduct that was neither severe nor pervasive, and because there is no inference that the defendants' conduct was based—in any way—on Burgess's disabilities. The Court agrees.

Burgess alleges that the defendants created a hostile work environment by insisting that Burgess accept the PIP without recognizing the negative effect of the PIP on Burgess's disabilities. See ECF No. 53 at 76. Burgess also alleges that the defendants created a hostile work environment by failing to provide reasonable accommodations with respect to Burgess's

---

[10] Even considering the five additional alleged incidents of gender discrimination in Wolkoff's Report that are cited in the plaintiff's opposition to the motion to dismiss but not in the SAC, these incidents were neither severe nor pervasive.

assigned classroom and course offerings. See, e.g., SAC ¶¶ 49–56.

Burgess's allegations are insufficient to plead a hostile work environment claim based on disability discrimination. Burgess has not alleged an environment that was objectively severe and pervasive. There are no alleged incidents of ridicule or abusive conduct against the plaintiff based on the plaintiff's alleged disabilities. While the plaintiff disagreed with the plaintiff's performance assessments, that is insufficient for a hostile work environment claim. See MacEntee, 783 F. Supp. 2d at 445 (dismissing hostile work environment claim under the ADA and finding that the plaintiff's "performance-related assessments . . . are wholly unrelated to [the plaintiff's disability]"). Moreover, the defendants' denial of the plaintiff's requests for accommodation were not characterized by ridicule or abuse toward the plaintiff based on the plaintiff's physical conditions. The defendants' alleged conduct was not objectively hostile or abusive. See Harvin v. Manhattan and Bronx Surface Transit Operating Auth., 767 F. App'x 123, 128 (2d Cir. 2019) (affirming dismissal of hostile work environment claim that was brought under the ADA when the plaintiff's "fraught relationships with [the plaintiff's]

supervisors," and other alleged conduct, failed to constitute an objectively hostile work environment).

Burgess has failed to allege sufficient facts to show that TNS's conduct amounted to a pervasive hostile work environment that is connected to Burgess's disabilities. See Pattanayak, No. 22-1411, 2023 WL 2358826, at *4; see also Kirkland-Hudson, 665 F. Supp. 3d at 467. The defendants' motion to dismiss Burgess's hostile work environment claim under the ADA and the Rehabilitation Act is **granted**.

### C. State and City Hostile Work Environment Claims – the NYSHRL and the NYCHRL

Burgess's claims of hostile work environment under the NYCHRL and the NYSHRL must also be dismissed.

Under the amended provision of the NYSHRL, a plaintiff bringing a hostile work environment claim need only plead that that the plaintiff was subjected "to inferior terms, conditions or privileges of employment because of [the plaintiff's] membership in one or more of th[e] protected categories." N.Y. Exec. Law § 296(1)(h); Moore v. Hadestown Broadway Ltd. Liab. Company, -- F. Supp. 3d --, No. 23-CV-4837, 2024 WL 989843, at *6 (S.D.N.Y. Mar. 7, 2024) ("[P]ursuant to the 2019 amendments to the NYSHRL, stating a hostile work environment claim under NYSHRL now requires only that the plaintiff plead sufficient facts showing [that the plaintiff] was 'subjected to inferior

terms, conditions, or privileges of employment' due to [the plaintiff's] membership in a protected class."); Tortorici v. Bus-Tev, LLC, No. 17-cv-7507, 2021 WL 4177209, at *13 (S.D.N.Y. Sept. 14, 2021)(same). "Nevertheless, a NYSHRL hostile work environment claim will not succeed if the offending actions are no more than petty slights or trivial inconveniences." Ndongo v. Bank of China Ltd., No. 22-cv-5896, 2023 WL 2215261, at *8 (S.D.N.Y. Feb. 24, 2023). And, even assuming a plaintiff was subjected to inferior terms, conditions or privileges of employment, the plaintiff must still plead that these actions were taken "because of" the plaintiff's protected characteristics. See id.

In this case, Burgess has failed to plead any facts to support a plausible inference that TNS subjected Burgess to an inferior condition or term of employment "because of" Burgess's gender or disabilities. In the SAC, Burgess alleges a single incident of misgendering, but there is no plausible allegation that this single incident subjected Burgess to an inferior condition of employment. Burgess alleges that two comparator employees engaged in improper conduct and were "treated differently" from Burgess by the defendants. SAC ¶ 83. But one of the employees—Sheck—was also investigated for her conduct by TNS, id., and the other employee—Cianni—acknowledged that he was

ultimately disciplined for his conduct, see ECF No. 53, Ex. G. And neither employee had a record comparable to the plaintiff's record. Moreover, Burgess does not plausibly allege that any differential treatment was caused by Burgess's disabilities or gender.

Burgess also alleges that the defendants created a hostile work environment by insisting that Burgess accept the PIP without recognizing the negative effect of the PIP on Burgess's disability. See ECF No. 53 at 76. But, as discussed above, Burgess's disagreement with the defendants' performance assessments is insufficient for a hostile work environment claim. Moreover, Burgess alleges no facts to support the inference that the defendants provided Burgess with a PIP "because of" Burgess's gender or disabilities.

Burgess alleges that the defendants created a hostile work environment by failing to provide reasonable accommodations with respect to Burgess's assigned classroom and course offerings. See, e.g., SAC ¶¶ 49-56. But Burgess does not allege facts to support the inference that the defendants declined to provide Burgess with reasonable accommodations "because of" Burgess's protected categories. Instead, Burgess alleges that the defendants engaged in a lengthy interactive process and made extensive efforts to engage with Burgess and Burgess's doctors.

As to the NYCHRL, a hostile work environment is "one where there is differential treatment" based on membership in a protected class. <u>Fattoruso v. Hilton Grand Vacations Co., LLC</u>, 873 F. Supp. 2d 569, 578 (S.D.N.Y. 2012); <u>Nieblas-Love</u>, 165 F. Supp. 3d at 68. This standard is "similar" to the pleading requirements Burgess must meet to sustain Burgess's claim under the amended NYSHRL. <u>See</u> <u>Tortorici</u>, 2021 WL 4177209, at *13; <u>Moore</u>, 2024 WL 989843, at *6 (referring to the amended NYSHRL and the NYCHRL pleading standard as "identical"). And, for the reasons discussed above, Burgess has failed to show that Burgess was treated differently from other comparators who lacked Burgess's gender identity or disabilities, or that Burgess was treated "less well" than these other employees because of Burgess's protected characteristics. <u>See</u> <u>Samuels</u>, 2023 WL 5717892, at *9.

The defendants' motion to dismiss Burgess's hostile work environment claims under the NYSHRL and the NYCHRL is therefore **granted.**

## VI.

With respect to the individual defendants' liability, there is no individual liability under Title VII, the Rehabilitation Act, and the ADA claims. <u>See</u> <u>Goe v. Zucker</u>, 43 F.4th 19, 35 (2d Cir. 2022)(Rehabilitation Act); <u>Guerra v. Jones</u>, 421 F. App'x

15, 17 (2d Cir. 2011)(Title VII); Spiegel v. Schulmann, 604 F.3d 72, 79-80 (2d Cir. 2010) (ADA). There is also no individual liability under Title IX. See Miotto v. Yonkers Pub. Schs., 534 F. Supp. 2d 422, 426 (S.D.N.Y. 2008) (collecting cases). Therefore, those claims are dismissed against the individual defendants.

With respect to the plaintiff's claims under the NYSHRL, "individuals with ownership interest or supervisors, who themselves, have the authority to hire and fire employees" can be held individually liable. Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 365-66 (S.D.N.Y. 2012) (collecting cases). In addition, the NYSHRL states that it shall be an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6); Feingold v. New York, 366 F.3d 138, 157-58 (2d Cir. 2004). A co-worker can be "held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff," if that co-worker "actually participates in the conduct" giving rise to the claim. Id.

In this case, Burgess has sufficiently alleged that TNS failed to provide reasonable accommodations for Burgess's disabilities. And, Burgess alleges that Arlene De La Rosa, the

Associate Director of Benefits, participated in the conduct that gave rise to Burgess's claim that TNS failed to provide reasonable accommodations for Burgess's disabilities. See, e.g., SAC ¶¶ 50-52, 57. Specifically, Burgess alleges that Burgess "explained events and impact of teaching new courses on disability in detail by email to Defendant De La Rosa," SAC ¶ 43, and that De La Rosa initiated the interactive process on behalf of TNS, id. ¶ 50. De La Rosa then allegedly asked Burgess to confirm Burgess's teaching load, id. ¶ 51, engaged in discussions with Burgess's doctors, id. ¶ 52, and that after these discussions, TNS refused Burgess's request for accommodations, id. ¶ 56. Even though there are no allegations that De La Rosa possessed the authority to hire or fire Burgess, De La Rosa can still be held liable under the NYSHRL's "aiding and abetting" theory, see Malena, 886 F. Supp. 2d at 367, and Burgess's allegations are sufficient at the pleadings stage to support the inference that De La Rosa participated in the conduct that gave rise to Burgess's claim.

With respect to the remaining individual defendants, Burgess has failed to allege the personal involvement of any other individual defendant in TNS's alleged wrongful conduct, and therefore, Burgess's NYSHRL claims against the individual

defendants must be dismissed, except for the claim against Arlene De La Rosa.

The NYCHRL provides individual liability for an employee "regardless of ownership or decisioning making power." Malena, 886 F. Supp. 2d at 366 (citing NYCHRL § 8-107(1)(a)). But, the individual defendant must "actually participate[] in the conduct giving rise to the plaintiff's discrimination or retaliation claim." Id. For the reasons discussed above, Burgess has not stated a claim of discrimination, retaliation, or hostile work environment, and therefore these claims must be dismissed against the individual defendants.

With respect to the surviving failure-to-accommodate claim under the NYCHRL, the claims against the individual defendants must be dismissed except for the claim against Arlene De La Rosa. "The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is virtually identical." Feingold, 366 F.3d at 158.

The NYCHRL creates an affirmative obligation to provide a reasonable accommodation to "enable a person with a disability to satisfy the essential requisites of the job[.]" Est. of Benitez v. City of New York, 193 A.D.3d 42, 49 (1st Dep't Feb. 1, 2021). As discussed above, Burgess has sufficiently alleged

that TNS failed to provide reasonable accommodations for Burgess's disabilities. And, under the NYCHRL, any individual defendant who participated in the conduct giving rise to the plaintiff's claim can be held individually liable. See <u>Baker v. MTA Bus Co.</u>, No. 18-CV-12231, 2023 WL 4896686, at *6 (S.D.N.Y. Aug. 1, 2023).

In this case, Arlene De La Rosa is the only individual defendant who Burgess alleges was involved in TNS's disability accommodation process. Because Burgess has sufficiently alleged at this stage of the litigation that De La Rosa was aware of Burgess's disabilities and allegedly participated in the process of declining to provide Burgess with reasonable accommodations, Burgess's claim against De La Rosa survives the defendants' motion to dismiss. The defendants' motion to dismiss the remaining claims against the other individual defendants is **granted**.

### Conclusion

The Court has considered all of the parties' arguments. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, the defendant's motion to dismiss is **granted in part and denied in part**.

63

The defendants' motion to dismiss Burgess's claims of discrimination, retaliation, and hostile work environment under Title VII, Title IX, the ADA, the Rehabilitation Act, the NYSHRL and the NYCHRL is **granted**.

The defendants' motion to dismiss Burgess's failure-to-accommodate claim under the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL is **denied**.

The defendants' motion to dismiss Burgess's claims against the individual defendants is **granted**, except for Burgess's claims under the NYSHRL and the NYCHRL against Arlene De La Rosa in connection with the failure-to-accommodate claims under those statutes, which is **denied**.

The Clerk is directed to close all pending motions.

SO ORDERED.

Dated:      New York, New York
            September 11, 2024

                                    _____
                                    John G. Koeltl
                                    United States District Judge